STEAGALL, Justice.
Liberty National Life Insurance Company appeals from a judgment based on a jury verdict in favor of plaintiff James Windham, as beneficiary of a life insurance policy on his son, in his suit to recover under a double indemnity provision in that policy. We reverse.
*968 Windham’s son, David, underwent back surgery twice for a job-related injury and experienced severe pain afterwards to the extent that he was unable to work and had to live with his parents. David’s physician, Dr. Judy Travis, prescribed two drugs, Darvon and propoxyphene, which he took continuously to relieve his lower back pain. Because the medication was insufficient, David began drinking in an effort to eliminate the pain.
On January 11, 1984, David came home after he had been drinking and went straight to his bedroom, complaining that he was having trouble breathing. After David vomited in his bathroom, his brother put him in bed, taking care to lay him on his stomach in the event that he became sick again. His brother went into the living room, and when he returned 15 or 30 minutes later, he found David dead.
Liberty National paid Windham the $15,-000 face amount of the life insurance policy on David. Windham sued when Liberty National refused to pay an additional $15,-000 under the accidental death provision of the policy. Liberty National moved for a directed verdict at the close of Windham’s case and at the close of all of the evidence, both of which were denied. The jury returned a verdict in favor of Windham, and Liberty National moved for a judgment notwithstanding the verdict, or in the alternative, a new trial, which was also denied. Liberty National claims the court erred in denying its motions for directed verdict, because, it argues, David’s death was not within the double indemnity provision of the contract. We agree.
Paragraph 1 of the double indemnity agreement provides:
“1. BENEFITS — Upon receipt at its Home Office of due proof that the death of the Insured resulted, directly and independently of all other causes, from bodily injury effected solely through external, violent and accidental means as experienced by a visible wound or contusion on the exterior of the body (except in case of drowning or internal injuries revealed by autopsy) ... the Company will ... pay to the beneficiary ... the Additional Indemnity for Death by Accidental Means....”
The thrust of Liberty National’s argument is that David’s death was not a result of “external, violent and accidental means”; Liberty National points out that the autopsy report, as well as the two doctors who testified as experts for Windham and Liberty National, stated that the immediate cause of death was cardiopulmonary arrest due to asphyxiation secondary to aspiration of gastric contents. Both Dr. Travis and Dr. Douglas Smith, the emergency room physician who examined David’s body, testified that David had choked on food that he had regurgitated rather than on food he was attempting to swallow. Moreover, David’s brother testified that neither David nor his family had eaten supper that evening, and that when he gave David mouth-to-mouth resuscitation there was vomit on David’s face and in his mouth.
We addressed this precise issue for the first time in Jones v. Liberty National Life Insurance Co., 357 So.2d 976 (Ala.1978), a case almost identical to the present case. In Jones, the insured died from total obstruction of the trachea due to aspirated vomitus or food matter. The question was whether death in this manner resulted from external means. If it did not, then whether the death was accidental, violent, and evidenced by a visible wound or contusion on the exterior of the body was immaterial. In affirming the judgment based on a directed verdict in favor of the insurer, we quoted with approval cáses from other jurisdictions holding that death was by external means if caused by matter that was ingested and by internal means if caused by regurgitated matter.
The double indemnity provision in Wind-ham’s policy is almost identical to the one in Jones. “Where ... the language of the restrictive coverage is clear and unambiguous the rule of construction that favors the insured has no application and the policy will be enforced according to its terms as written.” Jones, supra, at 977. The policy here is clear in its requirement that the accidental death be by external means. The record is devoid of any evidence that *969 David’s death was by any means other than internal.
Windham argues that David’s death falls within the “except in case of drowning or internal injuries revealed by autopsy” portion of the double indemnity provision, because Dr. Travis testified that aspiration is equivalent to “drowning.” We disagree. The drowning exception applies to the immediately preceding requirement that there be evidence of “a visible wound or contusion on the exterior of the body.” Wind-ham must still prove that David’s death was by external means, even though he did technically “drown.”
Based on our decision in Jones, we hold that, as a matter of law, David’s death was not by external means and, thus, that the trial court erred in denying a directed verdict for Liberty National. We therefore reverse and remand to the trial court with instructions to grant Liberty National a judgment notwithstanding the verdict.
REVERSED AND REMANDED WITH INSTRUCTIONS.
JONES, ALMON and ADAMS, JJ., concur.
HOUSTON, J., concurs in the result.